**BROWER LAW GROUP, APC**
Steven Brower (SBN 93568)
  Steve@BrowerLawGroup.com
Jason Brower (SBN 326078)
  Jason@BrowerLawGroup.com
23601 Moulton Parkway, Suite 220
Laguna Hills, CA 92653
Telephone: (949) 668-0825

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| HARBOR PIPE AND STEEL, INC. <br><br> Plaintiff, <br><br> vs. <br><br> MAZAK OPTONICS CORPORATION, <br><br> Defendant. | Case No.: <br><br> COMPLAINT FOR: <br><br> 1) FRAUD; <br> 2) NEGLIGENT MISREPRESENTATION; <br> 3) BREACH OF IMPLIED WARRANTY OF FITNESS <br> 4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY <br><br> DEMAND FOR JURY TRIAL |

Comes now, Plaintiff HARBOR PIPE AND STEEL, INC. ("Harbor Pipe" or "Plaintiff") and alleges as follows:

### INTRODUCTION

1. Pursuant to Local Rule 8-1, this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332 as the controversy is between businesses who are citizens of different states and the amount in controversy exceeds $75,000.

2.      Harbor Pipe is a steel processing and distribution business located in Riverside, California. Harbor Pipe has been in this industry since 1963. In order to process the steel coils it receives from suppliers, Harbor Pipe utilizes a number of industrial operations to flatten, shape, punch, and otherwise transform the steel from its original form. To do this, Harbor Pipe employs slitting machines, leveling machines, punches, plasma cutters, press brakes, and lasers among others. Harbor Pipe operates in three shift, 24 hours per day.

3.      In early 2019, Harbor Pipe was in the market to purchase a fiber laser in order to increase its speed, efficiency, and capacity to process steel. Harbor Pipe began discussing the purchase of a fiber laser with Defendant MAZAK OPTONICS CORPORATION, ("Mazak" or "Defendant") employees at this time. While Harbor Pipe originally voiced interest in purchasing an 8kW (industrial lasers are often identified by their power output) laser, Mazak promised that their newly introduced 10kW laser would be able to significantly outperform the 8kW laser for the tasks which Harbor Pipe intended to use the laser and had additional capabilities which would make it a better machine for Harbor Pipe to purchase.

4.      On or about April 16, 2019, Plaintiff, entered into a contract with Mazak to purchase an OPTIPLEX 4020 III 10000W FIBER (the "Laser"), along with several accessory components including but not limited to an MCS4020 (the "Automated Loading System"), nozzles, spare windows, piping, and specialized CAD/CAM software. In order to install this system in its facility and operate it, Plaintiff also undertook extensive creation of a new concrete foundation and purchased a Liberty air system. A true and correct copy of the sales contracts are attached hereto as Exhibit 1.

5.      Harbor Pipe was induced to enter into these contracts and purchase this expensive, top of the line, allegedly cutting-edge Laser system by Mazak's representations that this Laser would be able to meet certain specific performance

metrics which justified the high price of the machinery and software. These components and programs purchased from Mazak alone totaled more than $1,000,000 dollars, exclusive of the additional equipment, consumables, considerable labor costs, and modifications to the Harbor Pipe facility.

6. Mazak's pre-contractual representations about the Laser's performance, capabilities, running costs, and reliability were false, and Mazak knew or had reason to know of the falsity of these claims.

7. But-for Mazak's false claims, Harbor Pipe would not have entered into the purchase contracts.

8. As a result of Mazak's false claims, Harbor Pipe has suffered significant financial damages.

9. In addition, subsequent to Harbor Pipe entering into the contract for the Laser, Mazak's performance was deficient. Components and machines purchased by Harbor Pipe suffered from numerous delays, Mazak made errors in installation which made the machine temporarily inoperable, Mazak admitted that they had provided inaccurate cutting charts (documents which show the speed at which the Laser is able to cut various thicknesses of specific materials) that overstated the capabilities of the Laser, Mazak performed shoddy maintenance, Mazak's own estimates of running costs were less than half of what Harbor Pipe experienced in practice, and Mazak was never able to make the machine perform in the ways that it represented it would.

## **PARTIES**

10. Plaintiff is a California Corporation with its registered place of business in Riverside County, California. For purposes of diversity jurisdiction, Plaintiff is a citizen of California.

11. Defendant is an Illinois Corporation with its registered place of business in Kane County, Illinois. For purposes of diversity jurisdiction, Defendant is a citizen of Illinois.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as the controversy is between businesses who are citizens of different states and the amount in controversy exceeds $75,000.

13. Jurisdiction is also proper in this Court as Mazak has established minimum contacts with the State of California through the sale, servicing, and distribution of its products.

14. Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391(b), because that is the location in which a substantial part of the events or omissions giving rise to the claim occurred and because Plaintiff's principal place of business is in this district.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### Pre-contract promises and negotiations

15. Harbor Pipe first contacted Mazak on or about March of 2019 and spoke with Mazak employee Doug Young about the purchase of an 8kW fiber laser. Harbor Pipe laid out its planned use cases for the laser.

16. Following these initial discussions, Doug Young convinced Harbor Pipe to abandon the plan to purchase the 8kW laser and instead purchase the new 10kW laser instead, on the grounds that it would have significantly improved performance and could be more efficient in the long run if Harbor Pipe was willing to purchase additional equipment, including a Liberty air system.

17. Prior to the purchase of the Laser, Harbor Pipe laid out a series of processes which it wanted the laser to perform. These included, among others, common line cutting and the cutting of at least ½" mild steel using only high-pressure air as an assist gas (lasers of this type use a pressurized assist gas to force the molten metal out of the cut zone, otherwise it would cool in the cut zone and weld the pieces back together). In addition, Mazak made representations about the capabilities of the

machine, the capabilities of the Automated Loading System, and the rate at which consumables would be used by the machine which factors directly into both the running costs of the machine as well as the uptime.

**Post-contract failures, excuses, and apology**

18. Following the purchase of the Laser, the delivery and installation of the Automated Loading System was delayed several times, beyond the July 2019 time specified in the sales contract. The Automated Loading System was not installed until four months later than specified in the contract. While the contract called for delivery of the Laser in July 2019, actual installation of the laser was delayed and was incorrectly performed by Mazak. This lead to damage to the machine, increased running costs, delays in getting the machine operating and an overall reduction in productivity.

19. Once the laser was actually installed in the facility, it exhibited numerous failures both minor and severe. As part of the installation, Mazak's own documents state that their employees should set the shop air pressure to a value above 0. Not only was this not done, resulting in overheating of the head and damage to the machine, but Mazak failed to notice this for a month after the machine was installed and it was ultimately Harbor Pipe employees who identified the error.

20. Mazak reneged on its initial representation regarding the ability of the Laser to cut ½" mild steel using only air assist gas and stated that the maximum thickness of mild steel which could be cut use air assist gas was 3/8" inch.

21. The Laser's safety systems also failed, creating a hazardous condition where the Laser's table continued to move while a Harbor Pipe employee had taken the Laser offline and had his arms inside of the machine.

22. The consumption rate of the Laser was more than double what Mazak represented it would be. While Mazak initially agreed to credit Harbor Pipe for a portion of these overages, Mazak later changed its mind after Harbor Pipe stated that

it was not likely to purchase a second laser from Mazak given the failures in service and performance Harbor Pipe had experienced with the Laser.

23. The Liberty air system did not perform as advertised by Mazak.

24. Mazak admitted that the cut charts which it sent to Harbor Pipe included inaccurate information which overstated the capabilities of the machine.

25. Mazak's maintenance on the machine was unprofessional and incomplete. Mazak's technicians left important components zip tied inside of the machine, failed to tighten important bolts after completing maintenance, and damaged the laser as a result of improper maintenance.

26. In a March 2020 email, Doug Young of Mazak stated the following, "This is a difficult email to write and I have been debating this for about a week with myself. I know we have had many struggles with your installation and start-up. We started off on the wrong foot with multiple delays in the automation delivery caused by a fire at the factory. We had machine problems after installation. We had screw ups with your software. We gave you cutting charts that were not accurate for a few of the materials that you cut. There were issues with the Liberty Air System. Then we made the stupid mistake of putting you on "hard hold" due to not signing off."

## FIRST CLAIM FOR RELIEF
### Fraud in the inducement

27. Plaintiff repeats, realleges, and incorporates by reference every allegation contained in paragraphs 1-26 as though fully set forth herein.

28. Defendant represented to Plaintiff that, among other claims: (a) the Laser, as sold would be able to properly cut ½" mild steel using only air assist gas; (b) the Laser, as sold, would be able to perform common line cutting to a satisfactory degree; (c) the consumption rates of the Laser would conform to the rates provided by Mazak prior to sale.

29.     Defendant's representations regarding (a),(b), (c), and other claims about the Laser's performance were false. In fact, following sale, Mazak represented that cutting ½" of mild steel with only air assist gas was beyond the capabilities of the machine. Further, Mazak and Harbor Pipe were unable to achieve satisfactory common line cutting using the machine as sold. The Laser's consumption rates were materially beyond the rates provided by Mazak.

30.     When Defendant made the representations, Defendant knew or had reason to know they were false.

31.     Defendant made the representations with the intent to defraud and induce Plaintiff to enter into purchase agreement with Defendant.

32.     In justifiable reliance on Defendant's representations, Plaintiff: (a) entered into the purchase contract with Defendant.

33.     Because of Plaintiff's reliance upon Defendant's misrepresentations, Plaintiff has been damaged in the amount of hundreds of thousands of dollars as the Laser was unfit for its purpose.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

34.     Plaintiff repeats, realleges, and incorporates by reference every allegation contained in paragraphs 1-26 as though fully set forth herein.

35.     Defendant represented to Plaintiff that, among other claims: (a) the Laser, as sold would be able to properly cut ½" mild steel using only air assist gas; (b) the Laser, as sold, would be able to perform common line cutting to a satisfactory degree; (c) the consumption rates of the Laser would conform to the rates provided by Mazak prior to sale.

36.     Defendant's representations regarding (a),(b), (c), and other claims about the performance of the Laser were false. In fact, following sale, Mazak represented that cutting ½" of mild steel with only air assist gas was beyond the capabilities of the

machine. Further, Mazak and Harbor Pipe were unable to achieve satisfactory common line cutting using the machine as sold. The Laser's consumption rates were materially beyond the rates provided by Mazak.

37. When Defendant made the representations, Defendant knew or had reason to know they were false.

38. Defendant made the representations with the intent to induce Plaintiff to enter into purchase agreement with Defendant.

39. In justifiable reliance on Defendant's representations, Plaintiff: (a) entered into the purchase contract with Defendant.

40. Because of Plaintiff's reliance upon Defendant's misrepresentations, Plaintiff has been damaged in the amount of hundreds of thousands of dollars as the Laser was unfit for its purpose.

## THIRD CLAIM FOR RELIEF

**Breach of the Implied Warranty of Fitness for a Particular Purpose**

41. Plaintiff repeats, realleges, and incorporates by reference every allegation contained in paragraphs 1-26 as though fully set forth herein.

42. Defendant manufactured, supplied, and sold the Laser with an implied warranty that it was fit for the particular purpose of safely and effectively cutting metal. Among other claims, it was warranted that this product would work reliably, could cut ½" mild steel without assist gas, and would have running costs reasonably in line with those advertised by the manufacturer.

43. Plaintiff was an intended beneficiary of the warranty.

44. Plaintiff reasonably relied on the representations made by Defendant that the Laser was fit for the specific purposes listed above.

45. Defendant's breach of the implied warranty of fitness for a fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

46. Because of Plaintiff's reliance upon Defendant's misrepresentations, Plaintiff has been damaged in the amount of hundreds of thousands of dollars as the Laser was unfit for its purpose.

## FOURTH CLAIM FOR RELIEF

### Breach of the Implied Warranty of Merchantability

47. Plaintiff repeats, realleges, and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

48. Defendant manufactured, supplied, and sold the Laser with an implied warranty that it was fit for the ordinary purpose for which it was intended.

49. Plaintiff was an intended beneficiary of the warranty.

50. Defendant's Laser was not merchantable and fit for their ordinary purpose, because it failed to operate as shown by its performance in the Plaintiff's facility.

51. Defendant's breach of the implied warranty of fitness for a fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

52. Because of Plaintiff's reliance upon Defendant's misrepresentations, Plaintiff has been damaged in the amount of hundreds of thousands of dollars as the Laser was unfit for its purpose.

9
COMPLAINT

# PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff against the Defendants as follows:

1. Compensatory Damages, in an amount to be proven at trial;
2. An award of costs and expenses against the Defendant; and
3. Any and all other relief this Court may deem appropriate.

DATED: October 7, 2022

BROWER LAW GROUP
A Professional Corporation

By: /s/ Steven Brower
Steven Brower
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff Harbor Pipe and Steel, Inc. hereby demands trial by jury as to each and every issue as to which it is so entitled.

DATED: October 7, 2022

BROWER LAW GROUP
A Professional Corporation

By: /s/ Steven Brower
Steven Brower
Attorneys for Plaintiff